**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CLIFF C. RHOADS,                                        No. 2:17-CV-0920-DMC

        Plaintiff,

    vs.                                               <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action under

42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

Pursuant to the written consent of all parties (Docs. 7 and 8), this case is before the undersigned

as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C.

§ 636(c).  Pending before the court are the parties' cross-motions for summary judgment (Docs.

11 and 14).

/ / /

/ / /

/ / /

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

/ / /

| | | |
|---|---|---|
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted; |
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant

can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

If drug or alcohol use is a contributing factor material to a determination of disability, an individual is not entitled to benefits.  See 20 C.F.R. §§ 404.1535 and 416.945; see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).  The burden is on the plaintiff to demonstrate that drug and alcohol addiction is not a material factor by showing that an impairment would have been disabling even if drug and alcohol use ceased.  See Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007).  To do so, the plaintiff would have to demonstrate that the impairment ". . . would remain during periods when she stopped using drugs and alcohol."  See Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001) (citing Sousa, 143 F.3d at 1245).

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 24, 2012, alleging disability beginning on August 28, 2010.  See CAR 12.[1]  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 20, 2013, before Administrative Law Judge (ALJ) L. Kalei Fong.   In a June 6, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairment(s): derangement of the right knee/status post reconstruction of the ACL; osteoarthritis of the right knee; schizophrenia, rule out paranoid type; mood disorder; personality disorder; and history of polysubstance abuse;
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on November 1, 2017 (Doc. 10).

3.      The claimant has the following residual functional capacity: based on all of plaintiff's impairments, including polysubstance use disorder, the claimant can physically perform sedentary work; mentally, the claimant is unable to complete more than simple short tasks, he would be able to maintain attention and concentration intermittently during an 8-hour workday, he would be able to interact with supervisors and co-workers occasionally and never with the public, the claimant is unable to handle changes in the work environment;

4.      Considering the claimant's age, education, work experience, residual functional capacity based on all of plaintiff's impairments, including polysubstance use disorder, the Medical-Vocational Guidelines would direct a finding of "disabled";

5.      If the claimant stopped substance use, however, he would have the residual functional capacity to perform sedentary work; mentally, the claimant would be able to complete simple short tasks and perform detailed instructions, maintain concentration and attention, frequently interact with others, and deal with changes in the work environment;

6.      Considering the claimant's age, education, work experience, residual functional capacity, Medical-Vocational Guidelines, and vocational expert testimony, and if the claimant stopped substance abuse, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See Car 14-26.

After the Appeals Council declined review on March 2, 2017, this appeal followed.

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions; and (2) the ALJ failed to properly consider plaintiff's subjective pain testimony.

### A.     **Evaluation of Medical Opinions**

At Step 4, the ALJ considered the medical opinion evidence to determine plaintiff's residual functional capacity.  See CAR 21-22.  Initially, the ALJ noted: "As for the opinion evidence, no treating physician has provided a medical source statement in this case." Id. at 21.  In determining plaintiff's residual functional capacity, the ALJ relied on the opinions of consultative examining physicians. Drs. Kinnison and Torrez, as well as the opinions of

5

consultative reviewing physician, Dr. Tyl. See id. As to these doctors, the ALJ stated:

> On November 20, 2012, consultative examiner, Dr. Michael Kinnison found the claimant with knee pain, status post surgery for ACL/MCL repair approximately one year past. He also had right sided root drop, exact etiology was unknown. The claimant reported not taking any medication and drinking 6 to 12 beers a day for pain relief. The claimant exhibited good muscle strength and 5/5 grip strength. His upper and lower extremity strength was 5/5. He could not do a deep-knee bend because of knee pain and his AFO brace would not allow him to bend his ankle. His straight leg lifting was positive on the right causing him to have knee pain at about 20 degrees. He was using a prescribed AFO splint on his right foot to correct his foot drop. He used it for all ambulation. He had right lower extremity pain. At that time, the doctor believed that the claimant had the ability to stand and walk up to two hours daily, primarily limited by his right knee and also by his right foot drop and neurological damage below the knee. His sitting capacity was unlimited. The assistive device that he was using was an AFO cast on the right. This was necessary for all ambulation. The doctor believed that he could lift 20 pounds occasionally and 10 pounds frequently, limited primarily be knee and leg pain. He could climb only occasionally, again limited by his knee and leg; his balance was unlimited. Stooping and crouching were unlimited. Kneeling and crawling would be limited to just occasionally by knee and leg pain. Manipulative activities of reaching, handling, fingering, and feeling were intact bilaterally. He had no environmental limitations (Exhibit 7F).

> On November 24, 2012, consultative examiner, Silvia Torrez, Psy.D., reported that the claimant was driven to the evaluation by his mother. He reported that he was seeking SSI benefits because he had physical and mental health problems and he was kind of bipolar and had psychotic episodes since 2008. In 2010, it added to his problems when he had his knee accident while playing football, and things just went down south. The claimant reported that he was diagnosed with bipolar disorder with psychotic episodes in 2008 while in prison. He was put into the mental health program at the correctional clinical case management system and was prescribed medications. He had individual counseling and he paroled in May 2009. He reported he has not taken any psychiatric medications since 2010. The claimant reported hospitalization in a psychiatric facility for three days in 2004 because he was coming down from a methamphetamine induced high and he was experiencing heart palpations and was worried about his health.

> He reported to Dr. Torrez that he was prescribed Risperdal while he was there. While he was in prison from June 2008 to May 2009, he was reportedly in a crisis bed because "I was schizophrenic and other stuff and I went blind and I had a heart murmur." The claimant reports he experiences auditory hallucinations that consist of bells and clapping off an on for several minutes on the right side of his head. He does not believe they are his imagination. The claimant reports his sleep has improved because he is drinking and he is reading a lot. His appetite is good and he has lost weight. His energy is poor and he does not have

much interest in day-to-day activities. He described his mood as "I'm on edge. I'm about to snap. I've gotten worse for the last couple of months. I feel hopeless and helpless, sometimes even worthless and tearful. I've been feeling like this since my accident. I don't have a job. I don't feel lime I'm work anything." The claimant reports he last worked as Sun Sweet Prunes for about three months on a seasonal basis.

Dr. Torrez diagnosed the claimant with a mood disorder, NOS; alcohol dependence, nicotine dependence, cannabis dependence, amphetamine dependence in early partial remission, and anti-social personality disorder. He did not exhibit a thought disorder and appeared to have a significant problem with both drugs and alcohol. He was not particularly limited in areas of mental functioning (Exhibit 6F).

On September 5, 2013, State agency psychological consultant, Dr. Rosemary Tyl, evaluated the claimant's mental impairments under sections 12.03 (Schizophrenia), 13.04 (Affective Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders) [of the Listings of Impairments set forth in the regulations]. The doctor noted the claimant's minimal history of mental health treatment, except for while incarcerated. His mental symptoms were likely residual effects of his chronic polysubstance abuse. She assessed him as limited to adaption for simple 1-2 step tasks that do not require interaction with the public and minimal/limited interaction with others (Exhibits 9F-10F).

CAR 15-17.

The ALJ gave great weight to these opinions, finding them consistent with the record and each other. See id. at 21 In particular, the ALJ relied on Dr. Tyl's assessment, which was based on Dr. Torrez' examination findings. See id. Dr. Tyl's finding that plaintiff's mental limitations were likely residual effects of polysubstance use formed the evidentiary basis for the ALJ's conclusion that, absent drug and alcohol abuse, plaintiff's remaining mental limitations would not preclude unskilled work. See id. at 26.

Plaintiff argues the ALJ improperly rejected the opinions of Physician's Assistant Max Hemping and Drs. Andrada and Malan, all of whom plaintiff states are treating sources.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

1              1.    <u>Physician's Assistant Max Hemping</u>

2          The ALJ gave no evidentiary weight to a December 24, 2012, medical source

3   statement provided by Max Hemping because, as a physician's assistant, he is not an acceptable

4   medical source under Social Security Ruling 06-03p.  <u>See</u> CAR 21.  Plaintiff argues:

5                  On December 24, 2014, Max Hemping, P.A., from Tehama County
          Health Services Agency Outpatient Clinic (Tehama) provided a medical
6          source statement (MSS) regarding Rhoads's conditions. AR 341.
          Physician assistant (P.A.).  Hemping opined that Rhoads is not capable of
7          working; is diagnosed with schizophrenia and deformity of the right knee;
          has primary symptoms of depression, agitation, anxiety, and very poor
8          concentration; has physical limitations of limited mobility in the right
          knee; and other pertinent conditions include emotional instability.  <i>Id</i>.
9          P.A. Hemping had treated Rhoads previously as part of Rhoads's
          treatment team at Tehama and under the supervision of Jon D. Malan,
10         D.O.  AR 422-23, 424-25, 426-27, 428-29, 430-32.  P.A. Hemping's
          opinion is consistent with that of his treatment team since they were privy
11         to Hemping's medical records at Tehama.  The opinion of an examining
          physician can only be rejected for specific and legitimate reasons that are
12         supported by substantial evidence in the record. <i>Andrews v. Shalala</i>, 53
          F.3d 1035, 1043 (9th Cir. 1995).
13                 At the time of the ALJ decision, the ALJ had an obligation to
          explain the weight given to all medical opinion evidence.  20 C.F.R.
14         § 416.927.  The current regulations require the ALJ to consider all the
          medical opinions together.  20 C.F.R. § 416.927(b) (2017).  The
15         regulations do not permit the ALJ to disregard probative opinion evidence
          without explanation; the Commissioner requires the ALJ to explain the
16         weight given to opinions from non-acceptable medical sources and
          nonmedical sources.  20 C.F.R. § 416.927(f)(2) (2017).
17                 The ALJ stated that "as a physician's assistant, Mr. Hemping is not
          considered an acceptable medical source.  Social Security Ruling 06-03p."
18         AR 21.  While Rhoads does not concede that P.A. Hemping's opinion is
          not an acceptable medical source, the ALJ cannot disregard this evidence,
19         acceptable or not, without further explanation.  The ALJ failed to provide
          a sufficient explanation for rejecting P.A. Hemping's opinion.

20

21         Mr. Hemping completed a one-page Medical Source Statement on December 24,

22  2014.  <u>See</u> CAR 341 (Exhibit 12F).  Mr. Hemping indicated diagnoses of schizophrenia and

23  deformity of the right knee.  <u>See</u> <u>id</u>.  Mr. Hemping listed plaintiff's physical/mental limitations

24  and "other pertinent considerations" as "limited mobility right knee" and "unstable emotionally."

25  <u>Id</u>.  Mr. Hemping does not reference any objective clinical findings in support of his statement.

26  <u>See</u> <u>id</u>.

The court finds no error in the ALJ's decision to assign Mr. Hemping's assessment no evidentiary weight. As defendant notes, the ALJ is not required to consider evidence that is "neither significant nor probative." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Mr. Hemping's source statement is neither significant nor probative because it does not indicate any meaningful functional limitations in terms of plaintiff's residual functional capacity. In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (holding residual functional capacity reflects current "physical and mental capabilities"). "Limited mobility right knee" is a general clinical observation, not an opinion regarding plaintiff's ability to perform the physical demands of work.[2] Similarly, "unstable emotionally" does not suggest any particular opinion with respect to plaintiff's ability to perform the mental demands of work, such as interacting with others or completing tasks. Mr. Hemping's source statement is also neither significant nor probative because it does not reference any objective findings. See e.g. Meanel, 172 F.3d at 1113 (holding the ALJ need not give any weight to unsupported conclusory opinions).

### 2. Drs. Malan and Andrada

As to Drs. Malan and Andrada, the ALJ stated:

> On March 5, 2015, Dr. Jon D. Malan assessed the claimant as only being able to perform less than sedentary exertion. He could sit, stand, and walk less then 2 hours in an 8-hour workday. He would need to take six unscheduled breaks during an 8-hour workday. He could rarely lift and carry less then 10 pounds during an 8-hour workday. He could never twist, stoop, crouch, and climb (Exhibit 16F).

///

---

[2] The exertional capabilities associated with the physical demands of work are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).

On March 10, 2015, Dr. C. Andrada assessed the claimant based upon alleged impairments of bipolar disorder, mixed with psychotic features. The doctor did not designate any signs or symptoms of this impairment. He rated the claimant as moderate in maintaining his daily activities, and marked in maintaining social functioning and concentration, persistence, or pace. He assessed the claimant as having one or two episodes of decompensation. The doctor noted that the claimant would not be absent from work due to his impairment or treatment (Exhibit 17F).

CAR 17

The ALJ found these opinions unsupported by the record and gave them little weight. See id. at 21. Plaintiff argues the ALJ erred by failing to identify specific reasons for rejecting any particular opinion.[3]

A review of the record reflects Dr. Malan completed a three-page Physical Medical Source Statement on March 5, 2015. See id. at 430-32 (Exhibit 16F). For clinical findings and objective signs supporting his statement, the doctor listed: "physical deformity right knee." Id. at 430. Dr. Malan opined plaintiff is unable to walk even one city block without rest or severe pain, see id. at 431, plaintiff can sit or stand for only five minutes at a time before requiring a change in position, see id., and plaintiff can only sit/stand/walk for less than 2 hours over an eight-hour workday, see id. Dr. Malan also opined that plaintiff would require six 15-minute rest breaks throughout a normal workday. See id. Dr. Malan concluded that plaintiff can rarely lift up to 10 pounds and never lift more than that. See id. The doctor also concluded that plaintiff can never twist, stoop, bend, crouch, squat, climb ladders, or climb stairs. See id. at 432. Regarding other limitations, Dr. Malan listed "psychological schizophrenia, psychotic episodes." Id.

/ / /

/ / /

---

[3]    Plaintiff also argues the ALJ erred by stating no treating physician submitted a medical source statement because Drs. Malan and Andrada are both treating sources. This argument is well-taken but, as discussed herein, does not alter the court's analysis.

1    Dr. Andrada completed a four-page Mental Medical Source Statement on March

2    10, 2015.  See CAR 434-37 (Exhibit 17F).  The second page of the doctor's statement consists of

3    a checklist of signs and symptoms, which the doctor left completely blank.  See id. at 435.  Dr.

4    Andrada opined that plaintiff is moderately limited with respect to activities of daily living, see

5    id. at 436, and markedly limited in his ability to maintain social functioning, concentration,

6    persistence, and pace, see id.  The doctor stated that plaintiff is incapable of handling even a

7    minor change in work demands or environment.  See id.  Dr. Andrada did not respond when

8    asked to indicate how often plaintiff would miss work due to his impairments and limitations.

9    See id. at 437.

10    Where, as here, a treating opinion is contradicted by the opinion of an examining

11    professional, the ALJ may resolve the conflict in the evidence.  See Andrews, 53 F.3d at 1041.

12    Dr. Malan's opinion is contradicted by Dr. Kinnison, who examined plaintiff and opined plaintiff

13    can lift 20 pounds occasionally and 10 pounds frequently, can climb occasionally, and can

14    balance, stoop, and crouch without limitation, see CAR 310-14 (Exhibit 7F), and Dr. Andrada's

15    opinion is contradicted by Dr. Torrez, who also examined plaintiff and opined plaintiff is not

16    limited in mental functioning, see id at 302-309 (Exhibit 6F).  In resolving the conflict, the ALJ

17    rejected the more limiting opinions expressed by Drs. Malan and Andrada because they are

18    unsupported.  The court finds no error in this reasoning because, other than a very general

19    reference to "physical deformity right knee" in Dr. Malan's statement, CAR 430, neither

20    statement references any clinical objective findings of record to support the doctors' opinions.

21    See Meanel, 172 F.3d at 1113; Magallanes, 881 F.2d at 751.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

1    **B.    Plaintiff's Credibility**

2           At Step 4, the ALJ also considered plaintiff's statements and testimony and

3    determined his subjective complaints of disabling pain were not credible.  See CAR 19-21, 25.

4    As to the credibility of plaintiff's statements and testimony, the ALJ stated:

5            The claimant has no work history of consequence. . . .  The claimant has
             spent an inordinate amount of his life incarcerated related to illicit drugs.
6            He is not motivated to work as he has never really worked in any gainful
             employment.  The evidence of record does not show that he has contacted
7            the State Department of Vocational Rehabilitation with regard to testing or
             training to re-enter the world of work.  All of these facts diminish his
8            credibility.

9            The claimant testified he was in county jail from December 2013 to
             November 2014.  He was also incarcerated in 2005 to 2006, 2008 to 2009
10           and 2011 to 2012.  He does not remember the exact dates.  He is on
             probation until next year.  He has been arrested for using meth.  He also
11           failed a court date.  He is currently going to drug and alcohol classes at
             Tehama County Drug Services and has been doing so since December of
12           2014.  He must do drug testing.  He also goes to Tehama County Mental
             Health.  He sees counselor Avery.  He stated that he last used meth in
13           December 2013.  He last used pot ten years ago.  He last drank beer in
             December of 2013.  He stated that his impairments include his mental
14           issues and right knee pain.  He has gone to physical therapy for the knee,
             which has not helped.  His last therapy was January 14, 2015, at
15           Greenville Rancheria.  He has foot drop and nerve problems.  He had
             surgery in 2010.  He last saw a doctor a few years ago.  He wears a brace.
16           He received mental health treatment while in prison and was isolated.  He
             saw a number of therapists in Tehama County jail.  His medications
17           include Risperdal, Trazadone, and Tramadol.  He is mostly tired and
             drowsy.  He had up and down moments.  He is mostly depressed.  He has
18           no self-esteem and he does not want to live.  He has 26 bad days a month.
             He mostly stays in bed.  His grandparents help with his day-to-day
19           activities.  He hears voices who talk down to him.  He is paranoid around
             others.  He often isolates himself 2 to 3 times a week.  He walks for 20
20           yards and has pain that causes him to stop.  He has to elevate his right leg
             for 3 hours a day.  He has pain climbing stairs and stepping on curbs.  He
21           has poor balance and often trips (Testimony).

22           His most recent incarceration from December 16, 2013, to January 5,
             2015, was the result of possession of methamphetamine (meth) and
23           probation violation (Exhibit 19F)> He attended a court-ordered rehab
             program.
24
             The claimant stated that he was clean and sober from alcohol and meth
25           since December 2013.  Obviously, his incarceration that month would
             have "forced" his sobriety.  The claimant is not a credible historian and his
26           sobriety is difficult to confirm while he was incarcerated.  He filed this

claim in July 2012. He completed a Function Report about that same time. He reported that he bought "lots of booze for pain" and the, he was on "alright medicine" (Exhibit 5E/5). On March 3, 2015, he was just out of drug rehab for alcohol and meth. He reported sill having cravings (Exhibit 14F/34).

His right knee was reconstructed (Exhibit 1F/33). Post-operatively, the knee was stable and required conservative treatment (Exhibit 1F/13). There did not appear to be a need for physical therapy (Exhibit 5F/5). He alleges problems with his right knee, however, he has not been in physical therapy since December 11, 2014 (Exhibit 13F). His last physical therapy showed that he had a normal physical exam (Exhibit 13F/31).

\* \* \*

The claimant's medical record documents that he has been dishonest, manipulative, and deceptive (e.g., trying to "hoard" his administered medication while incarcerated) (Exhibit 5F/15-16).

On April 29, 2013, a nurse noted that the claimant often refused his Ibuprofen at medical call (Exhibit 19F/3, 8, 24, 69, 88). The undersigned notes that he was prescribed Ibuprofen for his complaints of right knee pain.

On January 16, 2014, the claimant admitted to working out, but said it was mostly his upper body. He was advised that if he was found working out his legs (squats, running, etc.), his Tramadol would be stopped (Exhibit 19F/66). On February 10, 2014, it was noted that the claimant had been using meth prior to incarceration on December 16, 2013. A nurse suspected him of "cheeking" his Tramadol (Exhibit 19F/57). On September 29, 2014, all of his medication was stopped because he was "cheeking" them all (Exhibit 19F/11). On October 30, 2014, the claimant reported that it was unfair that his medications were stopped. He was "cheeking" them to "double up" on them because his knee pain was not being treated appropriately (Exhibit 19F/6).

While the claimant testified that physical therapy [did not help], the medical evidence negates his testimony. In August of 2011, therapist Leonard Hall reported that he had improvement in his right foot strength since his last session in January of 2011. He was able to do squat exercises and double stance jumps (Exhibit 5F/13). Then, on December 16, 2014, physical therapist Jim Montana reported that the claimant told him that his right knee felt good after the last treatment (on December 11, 2014). The claimant reported that there was some medial right knee pain at present because *he fell off of his bike* (emphasis added by ALJ) a couple of days past (Exhibit 13F/26). On January 2, 2015, the claimant reported that his right knee seemed to be getting stronger. His pain level was less. He was pleased with his progress thus far (Exhibit 13F/15). On January 5, 2015, he reported that both knees were improving and he had less pain in both knees when walking (Exhibit 13F/12).

The undersigned finds that the claimant is deceptive. While advocating mental impairment he readily presents "catch phrases." He describes low self-esteem, not feeling worthy, does not desire to live, he avoids people, he hears voices, and he is panicky.

The claimant does not present as an individual who is genuinely motivated to improve his mental and physical condition. Certainly, he is not motivated to work.

* * *

His own testimony about problems with his right knee (e.g., has difficulty stepping on to a curb, must elevate his right leg 3 hours a day) is not supported by the medical record. As recently as January 12, 2015, he told physical therapist Jim Montana that he was pleased with the progress of his right knee and hoped to return to some of his usual recreational activities eventually (Exhibit 13F/6). Certainly, he was given exercises he could do at home to enhance his physical therapy.

The claimant's credibility is such that the undersigned is not persuaded that his right knee is as severely impaired as the claimant alleges. Nor is it unreasonable that he presents himself as incapable of functioning normally when he is at a higher level of functioning. Clearly, he has the wherewithal to live on his grandparent's property and assist his grandparents without incident. Nonetheless, his RFC when not abusing polysubstances has been eroded accordingly.

CAR 19-21, 25.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

1    If there is objective medical evidence of an underlying impairment, the

2 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3 because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5           The claimant need not produce objective medical evidence of the
            [symptom] itself, or the severity thereof.  Nor must the claimant produce
6           objective medical evidence of the causal relationship between the
            medically determinable impairment and the symptom.  By requiring that
7           the medical impairment "could reasonably be expected to produce" pain or
            another symptom, the Cotton test requires only that the causal relationship
8           be a reasonable inference, not a medically proven phenomenon.

9           80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
            Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14 claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15 testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16 prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

17 (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19 claimant cooperated during physical examinations or provided conflicting statements concerning

20 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21 claimant testifies as to symptoms greater than would normally be produced by a given

22 impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23 Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24 ///

25 ///

26 ///

Plaintiff argues the ALJ erred by improperly referring to mental health "catch phrases," as well as by citing physical therapy records showing improvement and suppositions unsupported by the evidence concerning activities plaintiff performed on his grandparents' property. Because the ALJ cited other appropriate reasons supported by the record in finding plaintiff's statements and testimony of disabling pain not credible, the court does not reach plaintiff's arguments in concluding the ALJ did not err. The ALJ found plaintiff to be deceptive, particularly with regard to hoarding of medication, which is an appropriate comment on plaintiff's reputation for truthfulness. See Smolen, 80 F.3d at 1284. The ALJ also properly noted that, despite allegations of disabling pain, plaintiff often did not seek treatment and when he did it was conservative. See id. The ALJ also properly cited plaintiff's daily activities, which included riding a bike and are inconsistent with disabling pain. See id. The ALJ properly observed that plaintiff's lack of a work history and record of incarceration suggest his continued unemployment is due to a lack of motivation to work and not disability. See id. Finally, the ALJ properly cited plaintiff's conflicting statements concerning drug and alcohol use. See Thomas, 278 F.3d at 958-59.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Moreover, the Commissioner's final decision must be affirmed because drug and alcohol use is a contributing factor material to the disability determination.  See 20 C.F.R. §§ 404.1535 and 416.945; see also Sousa, 143 F.3d at 1245.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 11) is denied;

2.    Defendant's motion for summary judgment (Doc. 14) is granted;

3.    The Commissioner's final decision is affirmed; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:   September 19, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE